UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD KRAUSE,

        Plaintiff,

  v.                                    Case No. 06-C-607

JO ANNE B. BARNHART,

        Defendant.

**DECISION AND ORDER**

Plaintiff Richard Krause challenges an unfavorable determination of his application for disability insurance benefits by the Commissioner of Social Security. After his application for benefits was denied, plaintiff sought and received a hearing before an administrative law judge (ALJ), who denied benefits in a written decision. Plaintiff asserts that the ALJ erred in relying on improper medical evidence and in ignoring the disability conclusion of his treating physician. He also argues the ALJ's credibility determination was flawed. For the reasons given herein, the decision of the Commissioner will be affirmed.

**I. BACKGROUND**

In 2001, Richard Krause, of Green Bay, injured his back while lifting a 55-gallon drum filled with iron. Following surgery and treatment, he continued to experience some pain but was allowed to return to work at a "medium" work level. On June 16, 2003, however, he injured his groin at work while attempting to move a stuck tractor. He then began experiencing back, leg and groin pain. An MRI revealed bulging of the L4-5 disk (Tr. 188) and treatment options since then have been of limited success.

Plaintiff applied for benefits and alleged disability since the date of his groin injury on June 16, 2003. After his application was denied, he appeared with counsel at a hearing before an ALJ on August 9, 2005. He testified that he had pain in his back, buttocks, upper leg and heel. He described the pain as a "five" or "six" (on a ten-point scale) at night and in the mornings, although he stated that the pain worsened during the day. (Tr. 50.)

Plaintiff, who was then 36 years of age with an eleventh grade education, testified that his typical day was spent lying in bed with a pillow between his legs to keep them separated. (Tr. 56.) He would sleep for much of the day and only get five hours of sleep at night. (Tr. 58.) He was able to walk up stairs or walk to the garage for brief intervals, but the bulk of his days were spent in bed due to pain. He was currently not taking any medication. The ALJ was evidently unimpressed with his testimony, however, at one point interjecting: "Counsel, excuse me, I get the idea . . . He's claiming severe pain, okay, I think I've heard enough from the claimant, all right." (Tr. 58.)

The ALJ then heard from Dr. Ashok Jilhewar, the medical expert ("ME"). Dr. Jilhewar testified that the plaintiff had severe pain in the left L4 with radiculopathy (radiating pain caused by inflamation of nerve roots). (Tr. 60.) He testified that plaintiff's pain is typical for the left L4 radiculopathy but that he did not have any clinical findings supporting any effect on his functioning. (Tr. 61.) He also testified that the MRI did not reveal a cause for the severity of plaintiff's complaints of pain: "usually this is not expected to result in such a severe pain. I'm not saying he does not have a severe pain but the MRI findings do not explain that . . ." (*Id.*) He further testified that the plaintiff's complaints of severe pain were not supported by other medical testimony, and he stated that he did not know how Dr. Rosteing, plaintiff's treating physician, had concluded that the plaintiff was totally disabled. (Tr. 64.)

The final witness was the vocational expert ("VE"). The VE concluded that the plaintiff would be unable to perform any of his past jobs involving heavy exertion, such as cleaning or cable installation. (Tr. 69.) The ALJ asked whether any other jobs existed in eastern Wisconsin for a person who could perform "light" work– lifting 10 pounds frequently, standing or sitting six hours, etc. (*Id.*) The VE testified that there would be some 14,000 jobs as an assembler; 7,500 jobs as an inspector; and 6,000 jobs as a production machine operator. (Tr. 70.) The ALJ then asked whether any jobs existed if the plaintiff could only stand for two hours out of an eight-hour day. The VE concluded that there would be some 11,500 positions as a clerk, cashier, or receptionist. (Tr. 71.)

In her written decision, the ALJ found the plaintiff somewhat less than fully credible as to the severity of his pain. She also discounted what she described as the cursory disability conclusion of Dr. Rosteing, noting that the conclusion was not supported by objective medical evidence. Thus, the ALJ found that the plaintiff suffered a "severe" impairment but that he did not meet or equal any of the listings in the regulation. (Tr. 20.) Finally, she concluded that the plaintiff maintained the residual functional capacity to perform light work in line with the jobs suggested by the VE. Accordingly, the ALJ concluded the plaintiff was "not disabled." (Tr. 22.)

## II. ANALYSIS

The ALJ's decision will be upheld if it is supported by substantial evidence. "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir.2002). The plaintiff claims the ALJ erred in discounting his credibility, addressing the medical evidence, and in assessing a residual functional capacity. I address each of these arguments below.

3

**1. Credibility**

Plaintiff first argues that the ALJ's adverse conclusion about the plaintiff's credibility was not supported by substantial evidence. An ALJ's credibility determination will not be disturbed unless it is "patently wrong" or simply unsupported by the record. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Here, the ALJ discounted the plaintiff's credibility for several reasons. First, as discussed more fully in Part 2 below, the plaintiff's claims of severe pain found no basis in the objective medical evidence. As his own treating physician, Dr. Rosteing, noted, plaintiff's complaints of groin pain did not match up to the injuries shown in the MRI. (Tr. 205.) If that pain stemmed from a left hip adductor strain on June 16, 2003 (rather than the prior back injury), that would not be expected to last persistently. (Tr. 64, 208.) Moreover, the medical expert who testified, Dr. Jilhewar, could not locate a basis for the level of pain severity that the plaintiff claimed. Although an ALJ may not ignore subjective complaints of pain solely because they are unsupported by medical evidence, *Schmidt v. Barnhart,* 395 F.3d 737, 746-47 (7th Cir. 2005), she may consider discrepancies between the objective medical evidence and the degree of pain complained of, which may be "probative of exaggeration." *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir. 2005).

Second, the plaintiff was not taking any pain medication at the time of the hearing and had earlier refused to have epidural steroid injections to treat the pain. This, in the ALJ's view, "suggests that the symptoms may not have been as limiting as the claimant has alleged." (Tr. 20.) Although plaintiff explained that he could not afford expensive epidural shots and opined elsewhere that he did not like their side-effects, he had no explanation for why he was not taking *any* medication–even ibuprofen, aspirin or acetaminophen–at the time of the hearing. Moreover, it is not as though the ALJ was unfairly discrediting the plaintiff for failing to take "ineffective"

4

medication, as in the case plaintiff cites, *Ribaudo v. Barnhart,* 458 F.3d 580, 585 (7th Cir. 2006). Medication is one of the factors an ALJ must consider, *see* 20 C.F.R. § 404.1529(c)(3), and the absence of any course of treatment is certainly fair game, especially when evaluating subjective complaints of pain. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) ("failure to take pain medication is relevant to the credibility determination.")

Third, the ALJ found it noteworthy that the plaintiff's physical activities questionnaire, submitted in November 2003, stated that he walks around and cares for his four-year-old son on a daily basis, bathing and dressing him and the like. (Tr. 124-129.) He does all of the standard daily chores, leaves the house, cooks or picks up food, shops and cleans. It is true that his questionnaire qualifies these activities by the phrase, "depending on pain," but the ALJ was entitled to conclude that these activities – especially full-time child care – were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 20.) In other words, the plaintiff's earlier descriptions of daily activity seemed to contrast with the plaintiff's live testimony, in which he described himself as essentially bed-ridden. (Tr. 57.)

These reasons for discounting subjective complaints of pain are not "patently wrong" and provide substantial evidence for the ALJ's conclusion. Whenever subjective pain is at issue, so is credibility. It will be the rare case in which a claimant's claims of severe pain are so obviously fabricated that a credibility finding is clear-cut. More typically, the ALJ is tasked with addressing the medical evidence, the plaintiff's own statements and testimony, and the plaintiff's behavior. When medical evidence does not fully support the claimant's claims, and when the claimant's behavior and statements are not entirely consistent with claims of severe pain, the ALJ will generally be entitled to discount the claimant's credibility. *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000) (discrepancy between medical evidence and claims of pain, as well as failure to take pain

5

medication provided substantial evidence for adverse credibility finding). That is what happened here, and it was not error.

**2. Medical Evidence**

The plaintiff also asserts that the ALJ improperly addressed the medical evidence and failed to give controlling weight to the opinion of plaintiff's treating physician, Dr. Rosteing. Dr. Rosteing opined, in a form provided by plaintiff's attorney, that plaintiff was totally disabled. (Tr. 269, 271.)

Plaintiff's general position is that it was unreasonable for the ALJ to rely on medical professionals who did not treat the plaintiff when the plaintiff's own treating physician thought he was disabled. Of course the ALJ is not required to agree with the treating physician's opinion, or else the entire hearing and appeal process would be obviated whenever the treating physician gives a favorable opinion on disability. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work.") Because the treating physician's opinion is not dispositive, the question is whether this was an appropriate situation in which to discount the treating physician's opinion.

In *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006), the Seventh Circuit concluded that the so-called "treating physician rule" was of limited assistance to ALJs and litigants alike. The court noted that in some cases the treating physician's opinion is entitled to greater weight because the physician has actually seen the plaintiff, possibly repeatedly, and can be expected to speak more knowledgeably about the plaintiff's condition than doctors who merely reviewed records. *Id.* at 377. On the other hand, the court conceded significant wariness of the rule in light of the well documented phenomenon that treating physicians often bend over backwards to help their patients

6

obtain disability benefits.[1] *Id.* Ultimately, the court simply concluded that "the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Id.*

The circumstances in the present case do not lend themselves to blind adherence to Dr. Rosteing's conclusion. First, although the ALJ was faced with a treating physician's opinion that the plaintiff was "totally disabled," that opinion was contained within a single sentence in response to the inquiry of plaintiff's attorney. (Tr. 269.) Undoubtedly, as the ALJ concluded, the opinion is "quite conclusory, providing no explanation of the evidence relied on in forming that opinion." (Tr. 20.) Thus, even accepting the plaintiff's argument that Dr. Rosteing was in a better position to give a more credible opinion than the non-treating physicians, Rosteing's cursory conclusion did not take advantage of that position and thus gave the ALJ little reason to give the opinion much weight. In *Dixon v. Massanari,* the Seventh Circuit approved of the ALJ's similar approach to dealing with a conclusory treating source opinion:

> [Dr.] Voss accepted Dixon's complaints about blurred vision at face value, even though repeated ophthalmology exams failed to show any significant abnormalities. Finally, ALJ Kelly questioned the validity of Voss' statement that Dixon would miss more than 20 days of work per year. As we just noted, Voss expressed this opinion by writing "yes" next to a question that Dixon's attorney had pre-typed. Voss did not elaborate on the basis for this opinion. Thus, because she supported it with substantial evidence, the ALJ was not patently wrong in determining that Voss' opinion was not, given all the other facts, entitled to controlling weight.

270 F.3d at 1177.

Second, although there was no evidence in the record that would squarely contradict Rosteing's opinion, that is not surprising given the difficulty of proving the negative, i.e., proving that a claimant is not disabled or not experiencing a given severity of pain. Third, the opinion of

---

[1] Additionally, a physician's conclusion that a claimant is "disabled" may have little correlation with the legal definition of disability.

total disability stands in isolation to the rest of the medical evidence. What that evidence shows is that the plaintiff did have a physical basis for some amount of back pain – bulging in the L4, L5 area – but no physical basis for the severity of the pain he claimed, nor a basis for having persistent pain in his groin area. The ME testified that the MRI revealed no explanation for the severity of his pain. (Tr. 61.) He also noted that the neurologist who conducted the MRI found no basis for severe pain. (Tr. 62-63.) Finally, even the plaintiff's own treating physician never found a link between the plaintiff's injury and certain aspects of his pain complaints, noting that it was "confusing" because an L4 radiculopathy "should not go into the groin." (Tr. 205.) Dr. Rosteing also noted that the MRI scan "showed minor findings." (Tr. 209). In short, there is little evidence in the record supporting a persistent disabling condition. The state agency reviewer concluded there was no reason to think the groin condition would be permanent, as it was not based on any disc or nerve problem. Thus, even considering the plaintiff's subjective complaints of pain, he would be able to perform light activity in the near future. (Tr. 248.)

Although none of this evidence means the plaintiff was *not* experiencing severe pain – a point the ME emphasized in his testimony – what it means is that the treating physician's opinion of total disability was based not on objective medical evidence, nor on his own examination of the plaintiff – it was based on the plaintiff's own subjective complaints. *Powers,* 207 F.3d at 435 ("[D]octors who examined Powers diagnosed specific medical conditions which do cause pain, but only Eckert ever considered her to be suffering from disabling pain. The hearing officer was within his discretion to reject that opinion as conclusory and unsupported by the evidence.") Given these circumstances, I conclude it was not unreasonable for the ALJ to place little weight on the treating physician's conclusions. Contrary to plaintiff's claim that the ALJ "ignored" Dr. Rosteing's

opinion, it is clear that the ALJ was cognizant of the need to address all of the medical evidence and not blindly adhere to the conclusion of only one physician.[2]

**3. Residual Functional Capacity**

Finally, the plaintiff argues quite briefly that the ALJ erred in finding the plaintiff able to perform light work. This argument is based on the same premise addressed above, namely, that the ALJ should have followed the disability opinion of Dr. Rosteing rather than make an independent judgment based on the record as a whole. Because I found above that the ALJ's conclusions about the medical evidence were supported by substantial evidence, I reject the plaintiff's argument that the ALJ erred by failing to rely solely on Rosteing's conclusion that the plaintiff was disabled.[3]

### III. CONCLUSION

The ALJ's decision was supported by substantial evidence. Her decision is therefor affirmed, and the appeal is **DISMISSED**.

**SO ORDERED** this ___21st___ day of February, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[2]To the extent the ALJ relied on pre-onset date evidence, that does not materially denigrate her conclusion that the treating physician's opinion was entitled to little weight. Indeed, the medical evidence is unclear as to whether the June 20, 2003 accident caused any significant deterioration in the plaintiff's medical condition. Moreover, the ALJ appeared more persuaded by the timely medical reviews by the state agency physician and the ME who testified.

[3]Moreover, it is noteworthy that Dr. Rosteing himself appeared to view plaintiff as able to do at least some light work. For example, in his report of October 20, 2003, he recommended the plaintiff take two weeks off work , noting that "[t]here is no light duty available currently." (Tr. 207.) This suggests that Rosteing thought the plaintiff would have been able to return to his job had light duty been available.